CONKLIN et al. v. UNITED STATES SHIPBUILDING CO.

(Circuit Court, D. Maine. July 22, 1903.)

No. 569.

1. INSOLVENT CORPORATIONS—SUIT FOR DISPOSING OF ASSETS—ANCILLARY JURISDICTION OF FEDERAL COURTS.

The law, as recognized in the Circuit Courts of the United States, is that, when a federal court at the domicile of a corporation appoints a receiver, or makes a decree winding up the corporation and disposing of its assets, or a decree of foreclosure, or any other decree looking to a disposition of its property, having proper jurisdiction in equity therefor, the circuit courts in other districts will ordinarily exercise ancillary jurisdiction, and assist in carrying out the purpose of the court at the place of domicile.

2. SAME—PARTIES—SUBSIDIARY CORPORATIONS.

In an ancillary suit in another district to confirm in that district the appointment of a receiver for a corporation, made in the state of its domicile, where such corporation owns a majority of the stock of corporations of the state in which the ancillary suit is brought, and it is sought to have such stock transferred on their books to the receiver, as well as to include their business and plants, held by them under lease from the foreign corporation, in the receivership, such domestic corporations are necessary parties.

3. FEDERAL COURTS—JURISDICTION IN EQUITY—STATUTE CONFERRING JURISDICTION ON STATE COURTS.

A state statute, which confers on a state court jurisdiction in equity to entertain suits to wind up insolvent corporations and distribute their assets, which neither the state nor federal courts had previously, will be recognized by the federal courts as giving them like jurisdiction, provided the requisite diversity of citizenship exists between the parties.

4. SHIPBUILDING CORPORATION—LEASED PLANT—EQUITABLE RIGHT TO RETAIN POSSESSION TO COMPLETE VESSELS.

A Maine shipbuilding corporation, which had taken contracts for the building of a number of vessels, conveyed its plant to another corporation of New Jersey, which had become the owner of a majority of its stock, taking back a terminable lease. Before the vessels were launched, the New Jersey corporation became insolvent, a receiver was appointed for it by a federal court in New Jersey, and an ancillary suit was brought in Maine to have the appointment there confirmed, and the receiver placed in possession of the leased property. *Held* that, in view of the circumstances under which the conveyance and lease were made, the lessee was entitled, as against the lessor or its receiver, to retain póssession for the purpose of the completion of the contracts.

## In Equity.

This was an application on the part of the complainants to ratify, approve, and confirm within the District of Maine the appointment by the Circuit Court for the District of New Jersey of James Smith, Jr., of New Jersey, as receiver of all the assets of the United States Shipbuilding Company. The application was made in this court to Judge Putnam on the 13th day of July, 1903; but Judge Putnam stating that it was his settled practice to make no' appointments of receivers, either original or ancillary, without public notice, an order to show cause was made, returnable this day, of which notice was given by publication in daily papers at New York City and Bath, Me., with service of the same on the Bath Iron Works and the Hyde Windlass

¶ 1. Supplementary and ancillary proceedings in federal courts, see note to Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 195.

¶ 3. See Courts, vol. 13, Cent. Dig. § 902.

Company, constituent corporations within the district, as explained in the opinion of the court, and further like service on the attorney of the United States for the district of Maine. It appeared that the United States Shipbuilding Company is a corporation organized under the laws of the state of New Jersey; that it had absorbed various shipbuilding plants in New Jersey, Delaware, Maine, California, and elsewhere; that among the shipbuilding plants thus absorbed were those of the Bath Ironworks and the Hyde Windlass Company at Bath, in this district; that the business of the Bath Ironworks is the construction of seagoing vessels, and of the Hyde Windlass Company of certain fittings for such vessels; that the United States Shipbuilding Company had acquired the whole or the principal portion of the shares of the capital stock of these two corporations; that these two corporations had conveyed to the United States Shipbuilding Company their several plants; that, simultaneously with the conveyances, leases were executed by the United States Shipbuilding Company to each of the constituent companies of their respective plants, terminable in August, 1903, and also terminable on five days' notice by either party; that the rental reserved in each lease was the profits made by the lessee; that each local corporation had continued its business in its own name, as though there had been no change of title to the plant; that each had floating assets and floating liabilities; that the Bath Ironworks has under construction in the shipyards forming parts of its former plant several vessels, among which is a United States battleship, to be named the Georgia; that some of these vessels, including the Georgia, were contracted for before the conveyances and leases spoken of; that the contract with the United States for the construction of the Georgia contained the usual provision that, on certain conditions, the United States might take possession of the plant of the Bath Ironworks, and complete the vessel; that a bond, with sureties, in a very large amount, had been given by the Bath Ironworks to the United States, conditioned for the fulfillment of its contract; that the construction contracts of the Bath Ironworks necessarily extend over a series of years; that the Hyde Windlass Company has under way a large amount of work, but all can be completed without great delay; and that both corporations claim to be solvent, capable of performing all their contracts and meeting all their obligations, unless disturbed by the action of this court.

It also appeared that the Circuit Court for the District of New Jersey (which is the domicile of the United States Shipbuilding Company), Judge Kirkpatrick presiding, had taken jurisdiction on a bill in equity between the parties to this proceeding under the act of the state of New Jersey of 1896 entitled "An act concerning corporations" (P. L. 1896, p. 277, c. 185); that that act vests in the chancery courts of the state of New Jersey power to wind up insolvent corporations and distribute their assets; that it also contains a provision by virtue of which, in the event, after such proceedings are commenced, it appears that the corporation can discharge its liabilities, the proceedings may be discontinued, and the corporation restored to the control of its officers and stockholders; that, after a hearing, the Circuit Court in New Jersey entered a decree appointing James Smith, Jr., receiver, which decree is made by the complainants in this case the basis of this proceeding; that that decree gives certain enumerated powers to the receiver, among which is that of carrying on the business at the different plants of the United States Shipbuilding Company; that the decree also, in a general way, vests in the receiver all the powers contemplated by the act named, without in any way stating in detail the powers thus intended to be vested; that the decree, except in this general way, does not provide for the distribution of the assets of the corporation and for a winding up of its affairs; that, therefore, in many respects, the decree fails to have the aspects of a final decree, but gives color to a suggestion that it was intended only for temporary purposes; that the decree does not provide in terms that the receiver may terminate the leases referred to by giving the five days' notice, but that the receiver had undertaken so to terminate them; that, assuming he had the power so to do under the decree, the receiver had taken to himself, as receiver, a conveyance of all the assets of the United States Shipbuilding Company within the District of Maine, as well as elsewhere, includ-

ing the plants of the Bath Ironworks and of the Hyde Windlass Company; that the shares of the capital stock of those corporations belonging to the United States Shipbuilding Company had been transferred to him by the indorsements of the certificates, but had not been transferred on the stockbooks of the respective corporations, or new certificates issued to him therefor; that, while the decree gives the receiver general authority to conduct the business of the subordinate corporations, it does not contain such specific powers as would clearly justify the receiver in assuming such contracts as that for the construction of the Georgia, or entering into new contracts for the building of seagoing vessels; and that the complainants maintain that this decree is final, and, in connection with the conveyances to the receiver, vested in him a complete legal title to all the property within the District of Maine which, at the time of the decree, belonged to the United States Shipbuilding Company.

It also appeared that all the plants belonging to the United States Shipbuilding Company were mortgaged to the Mercantile Trust Company of New York, as trustee, for the benefit of holders of bonds described in the mortgage.

On the return day of the notice, the court heard informally all parties claiming an interest under the proceeding, reserving the determination to what extent, if at all, the court could or would allow any or all of them to intervene formally.

Guggenheimer, Untermeyer & Marshall and Chas. F. Libby, for petitioners.

Sullivan & Cromwell, W. J. Curtis, and Symonds, Snow, Cook & Hutchinson, for Mercantile Trust Company of New York and Reorganization Committee.

Orville D. Baker, J. M. Trott, Hornblower, Byrne, Miller & Potter, and W. W. Miller, for Bath Ironworks and Hyde Windlass Company.

Charles W. Larrabee, for Marine National Bank and Lincoln National Bank.

PUTNAM, Circuit Judge (orally). I think the interests of all the parties demand that I should give my views on this case now. The position is an extremely difficult one, arising from the fact that the two subsidiary corporations in Maine sold out their plants to the Shipbuilding Company, and yet continued to make contracts in their own names. It is also complicated by the more serious fact that, although the decree of the Circuit Court for the District of New Jersey, the place of domicile, in a certain way authorizes the receiver to continue the business of the United States Shipbuilding Company, yet it is apparent that it is not within the just power of any court to authorize a receiver to make the long-time contracts necessary to .carry on properly, and maintain to a proper standard of success, the construction of marine vessels, especially of one class which these subsidiary corporations build in this state and other states, namely, naval vessels of the United States. If the case were freed from those peculiar features, there would be no difficulty in my merely confirming, so far as this district is concerned, the decree entered in the Circuit Court for the District of New Jersey, including the conduct of the business by the receiver until the corporation was wound up as the statute of New Jersey contemplates it should be wound up when insolvent. As it is, I must struggle with the case the best I can.

The rule of so-called comity has little influence with me. The

best late writer on international law—Dicey—says very truly: "The term 'comity,' as already pointed out, is open to the charge of implying that the judge, when he applies foreign law to a particular case, does so as a matter of caprice or favor." It is rather a scapegoat, an opportunity of escape for the court. I know of few propositions that now come before the courts which are not governed by law, and in this case I must be governed by the law as practiced, and by the precedents, and not by any mere matter of comity. The law as recognized in the Circuit Courts of the United States is that, when the federal court of jurisdiction at the domicile of the corporation appoints a receiver, or makes a decree winding up a corporation and disposing of its assets, a decree of foreclosure, or any other decree looking to a disposition of its property, thereupon, assuming that to aid another federal court involves a federal question which will lawfully support the exercise of jurisdiction by the federal judiciary, the Circuit Courts in other circuits will exercise ancillary jurisdiction, and assist in carrying out the purpose of the court at the place of domicile.

The questions here, however, in addition to the difficulties to which I have referred, raise two material lines of investigation. One is whether the Circuit Court for the District of New Jersey was proceeding within the law at all, and the other is, what is the nature of the judgment, decree, or order of that court, which is now brought before me for my action? There are some subordinate questions as to the nature of the bill before me which I ought to lay out of the case before proceeding further. I will say that I can make no order until the complainants have made the Hyde Windlass Company and the Bath Ironworks defendants in their bill. This is because of the rule in Minnesota v. Northern Securities Company, 184 U. S. 199. The question may arise, and does arise now, as to the transfer of the shares of the capital stock in these two corporations to the receiver, or trustee, appointed by the Circuit Court for the District of New Jersey, whose appointment I am now requested to confirm; and the control of those certificates of stock will be retained by this court, and they cannot be effectually transferred on the books of the local corporations until this court authorizes it. No decree can be made directing those corporations to transfer, and issue new certificates of, stock, unless they are made parties to this bill. Therefore, before proceeding to enter an order, the complainants must amend by bringing them in. In addition, I see a special reason for requiring them to amend, because those corporations have so large interests in the questions before me that I ought not preclude them from a right to appeal from any order I may enter, if they desire so to do. Whether the Mercantile Trust Company, the mortgagee, should also be made defendant, I have no opinion about, and therefore I make no suggestion in regard thereto.

Now comes the question as to the nature of the bill before me. If this were a bill asking me merely to appoint a receiver ad interim, ancillary to an ad interim receiver appointed in New Jersey, I should pay no attention to it. But in my view it is a bill asking me to assist in enforcing a final decree made by the Circuit Court for the Dis-

trict of New Jersey, and asking me to gather together assets, or cause them to be gathered together, so that they can ultimately be accounted for where they should ultimately be accounted for; that is, to the Circuit Court for the District of New Jersey. It is like any bill asking the gathering up of assets by an ancillary proceeding for the purpose of causing them to be remitted to be disposed of by the court having jurisdiction at the place of domicile. Such proceedings relate alike to the estates of deceased persons, to corporations, and to all other subject-matters where there is occasion for gathering together and administering, marshaling, and forwarding the net results to the court of primary jurisdiction. In my view, it is a proper bill, addressed properly to the equity side of this court, praying final relief of the kind I have described, to which the motion now before us is purely interlocutory in its character, with a view to the temporary administration of the assets until this bill is disposed of on a hearing on the merits. Therefore I find no difficulty in the frame of the bill, except the necessity of making these two subsidiary corporations parties defendant.

The first substantial question I have to consider is whether the Circuit Court for the District of New Jersey had jurisdiction in equity on the bill filed there. In my opinion, it had. The bill was framed under the statute of New Jersey looking to the winding up of corporations and the distribution of their assets. The bill, unfortunately, is mixed in its character. The statute is likewise somewhat mixed. Both the bill and the statute provide that, under certain circumstances, the corporation be not wound up, and its assets not distributed; but that is only a contingency. The real purpose is the ordinary one of a bill filed for winding up an insolvent corporation and distributing its assets. In this state, independently of statute, no equity court has jurisdiction to take possession of the assets of an insolvent corporation, distribute them, and wind it up. Nor is this the basis of equity jurisdiction in the federal courts at common law. However, there is this statute in New Jersey, which invests state chancery courts with this jurisdiction. The question is: state courts having the statutory power in equity to wind up an insolvent corporation, do the laws of the United States prohibit a citizen of another state from going to the federal courts in the same state, and obtaining, through those courts, the relief which the Constitution ordinarily furnishes citizens of other states? In my judgment, there is no rule which requires that I should so conclude. It is settled, of course, that a mere state statute cannot confer upon a federal court equity jurisdiction. A state statute giving a state court jurisdiction in equity does not necessarily give a federal court like jurisdiction in the same state, but a state statute which confers on a state court jurisdiction which neither the state courts nor the federal courts had previously exercised, is recognized by the federal courts as giving them like jurisdiction provided the subject-matter of the legislation is equitable in its character; and, by necessity, judicial proceedings winding up a corporation are ordinarily of that nature.

It must be borne in mind that the gravity of this question, the mere fact that there is doubt, so far from barring a court from issuing an

interlocutory injunction or appointing a receiver, may be the very occasion for doing either one or the other, or both. We do not always sit here, on these preliminary matters with reference to injunctions and receivers, to settle questions. The mere fact, sometimes, that questions remain to be settled, requires us to act in this interlocutory manner. If it were clear that Judge Kirkpatrick had no jurisdiction in equity to appoint this receiver, if it were clear that this bill was brought, as so many bills are, simply for the purpose of getting a receiver, I should not concern myself about it, and should take no action; but, under the circumstances, there is so much to be said in favor of the jurisdiction of the court in New Jersey in this matter that I am bound not to turn my back on it. Independently of that, my present judgment is that it had jurisdiction, and that it proceeded rightfully in entering the decree which was entered. That decree I am told by the counsel for complainants is final. He is familiar with the local practice in New Jersey. It impresses me as a final decree, although it contains many things which look as though it was intended for temporary purposes. By its general reference to the statute of New Jersey as to the powers of the receiver, it may be construed as covering and extending to what it does not expressly state. At any rate, I think, for the present purposes, I must accept it as a final decree. What I may do when this case comes to a final hearing on the merits, if it ever does, is not for me now to determine.

What is the result of this in connection with what appears as to the title to the plants of these two subordinate corporations in Maine, and the occupation of them? The position is simply this: At common law, on the 8th day of August, by a title which, under the decisions of the Supreme Court, I must recognize, this receiver, appointed in New Jersey, having obtained under the order of the court of domicile a deed of all the property, will be entitled to immediate and absolute possession of the plants of both of these corporations; and I cannot sit here, knowing what that means, without making some order, not only for the purpose of acting in harmony with Judge Kirkpatrick, as I ought to do, but for the protection of all the parties concerned, especially the subordinate corporations, which need my assistance here more than the receiver needs it. Whether I can work out a satisfactory disposition of the difficulties, I do not know. I do not propose to make an order to-day, but simply to map out what I think the order should be. Counsel will have the benefit of what I say. They can ascertain whether they deem what I propose practicable, and they can afterwards make such suggestions with reference thereto as they think proper. Whatever order I may now map out, it is plain the future may require to be modified; and counsel need not hesitate, whatever is now entered, to apply to me in the future for any modification which they think should be made, as experience is developed by the progress of events. It is necessary that I should act in harmony with the Circuit Court for the District of New Jersey so far as I can. Yet this court cannot do either party before us much good. We may do all parties much harm by working in one direction while the court at the place of domicile is working in another. The general interests require that I should conform my action here, both with

reference to a receiver and to any order of sale, if one is made in New Jersey, so far as practicable, to the decrees of the court there, having due regard to the peculiar local position of these subordinate corporations.

Let us take, in the first place, the Hyde Windlass Company. The position, so far as it is concerned, is quite simple. It has brought on itself the condition now before me. The legal title to that plant vests in the receiver appointed by the court in the District of New Jersey. There is the lease to it, terminating on the 8th day of August next. There is no reason why I should not apply to that plant the general rule by virtue of which I am bound to work in harmony with the Circuit Court for the District of New Jersey. I am speaking now simply of that property which was conveyed by the Hyde Windlass Company to the United States Shipbuilding Company. I am not speaking of the cash belonging to the Hyde Windlass Company, nor of its bills receivable. Neither am I speaking of the stock, and other like property, purchased in the course of business, the title to which vests in the Hyde Windlass Company. The receiver has no jurisdiction over any of these, and they will be distinctly excepted from any order which may be entered in pursuance of what I am now stating. There will be an order that on the 8th day of August the Hyde Windlass Company surrendered to the receiver all the plant and property conveyed to the United States Shipbuilding Company which now remains in existence; but the receiver will be directed to give the Hyde Windlass Company all convenient facilities for the purpose of enabling it to complete the work on hand on the 8th day of August. After that day the receiver will be authorized, subject to the facilities thus to be given the Hyde Windlass Company, to operate the plant. This he may do himself or through the agency of the Hyde Windlass Company, as shall be determined by the court on application made before or after the 8th day of August. So far as the Hyde Windlass Company is concerned, I have no alternative except to enter an order in that way, unless I violate all the precedents which govern federal courts under these circumstances.

The Bath Ironworks affords no present difficulty to my mind, provided it is competent to carry on its own industry. It has what, in equity, is regarded as a lease. Underlying all these proceedings, underlying the general mortgage from the Shipbuilding Company, it had what the equity courts would enforce as an equitable lease against everybody, unless except against a purchaser for value in good faith, and ignorant of the existing circumstances. The Bath Ironworks undertook the construction of certain vessels in its yard. When the property was conveyed to the Shipbuilding Company, the fact that these vessels were under construction was known; especially the fact that, for the purpose of completing the battleship Georgia now there, the Bath Ironworks had stipulated with the United States that they might, under certain conditions, take possession of the plant, and finish the vessel. I do not rest the case on the Georgia. If a person owning a shipyard makes a parol lease, or, even, an implied lease, to another to construct a vessel in the yard, although, at the common law, such a lease may be terminated at will, or by sum-

mary notice under the statute, yet the equity courts would sustain it until the person constructing the vessel had reasonable time to get her off the ways. The rule applies wherever a person owning real estate permits another to undertake heavy work of construction on his premises. This equity is so strong that, necessarily, every presumption is always against its being surrendered. In this particular case, having in view the peculiar relations between the United States Shipbuilding Company and the Bath Ironworks, especially the fact that the interests of the former are to a substantial extent involved in the successful completion of the latter's contracts, and of the further fact that in no aspect is the United States Shipbuilding Company a purchaser for full value and ignorant of the existing conditions, I am of the opinion that this equity was not surrendered or waived by the conveyance and the lease back, already referred to, notwithstanding that ordinarily such transactions would bar all rights of this character not expressly reserved. In this case we have a receiver of an insolvent corporation. It has been my duty within a short time to investigate carefully the equitable rights of receivers, assignees, and trustees in bankruptcy. The law is that such receivers, trustees, and assignees have only the merest equity of the person or corporation from whom they take title. We go so far as to hold that the bankruptcy court, for example, and other courts administering insolvencies, not only do equity as ordinarily known, but compel the doing of equity as between man and man. I explained this rule quite fully in the opinion in Franklin A. Chase et al., Petitioners, 124 Fed. ——, passed down in the Circuit Court of Appeals on June 18, 1903, not yet officially reported. I think that, as against the Shipbuilding Company, and as against its receiver, this equitable right to maintain possession of these premises, to construct these vessels and finish them, exists. That right, of course, applies only to vessels now under construction.

I may hereafter be called on to apportion out the plant; but I can perceive no advantage to be derived from the receiver's taking possession at present of a part of the plant of the Bath Ironworks, even though the whole of it may not be needed by the Bath Ironworks for carrying out its contracts, if such were possibly the fact. Therefore, for the present, I shall deny him possession of any part thereof; and the decree must be framed so that, until the court otherwise orders, the Bath Ironworks may occupy the entire plant for the purpose of finishing the vessels now under construction. Of course, the receiver will be entitled to apply for further orders in case he finds that he can make use of a portion of the plant not required for the completion of the vessels now under way, or in case he finds that the Bath Ironworks is unable to proceed with its contracts, or is proceeding in a dilatory manner. The purpose of this order will be simply that the Bath Ironworks may have an opportunity to proceed promptly to complete its present contracts, if it demonstrates that it is able to complete them. If it is not able to complete them, events must take care of themselves.

Other things, however, must be borne in mind. The receiver may control the capital stock of the Bath Ironworks, and his advice, suggestions, and counsel, and to a certain extent his desires, cannot be

disregarded. This, perhaps, cannot be framed in the present order, and I state it simply because it may afford the basis of further orders in case it turns out that the Bath Ironworks do not proceed in harmony with him. Yet I do not anticipate anything of the kind. It is possible, of course, that the Bath Ironworks may find it cannot proceed with its contracts to their completion. In that event, either party may apply for further orders, and the court will gladly aid the parties in whatever may be suggested with reference to further relieving the position.

Of course, the Hyde Windlass Company and the Bath Ironworks must pay the receiver their rentals in accordance with the purpose of the terms of the leases. Counsel, in drafting the orders, will make proper provision in reference thereto. I do not know about the times of payment, how the amounts can be ascertained, or when ascertained. I leave that to counsel.

I shall also appoint masters to immediately take inventories, to be returned to court, of the assets of the Bath Ironworks, the Hyde Windlass Company, and the United States Shipbuilding Company, within this district. I can conceive that there may be some difficulty in discriminating, and in determining what assets belong to each of these corporations; but, the sooner this is done, the better for avoiding confusion and disputes in the future. I will allow the complainants to name one of the masters, the respondents another, and the third master I will appoint myself. In that way, I think we will be able to get an inventory which will be correct, and which will not require the attention of the court in undertaking to pass on questions of detail. It will be borne in mind by counsel that in this court the rule is administered most liberally as to what a mortgage, assuming to cover after-acquired property, covers in fact. In equity we follow Pennock v. Coe, 23 How. 117, 16 L. Ed. 436, to the fullest extent. If it is practicable for the Mercantile Trust Company to take a part in the inventory, it may save some difficulties hereafter; but the inventory should be made at once.

Of course, the Hyde Windlass Company and the Bath Ironworks must account to the receiver, not only for rent, but for whatever assets they use, now on hand, belonging to the United States Shipbuilding Company. That must be provided for in the order. Whatever funds come into the hands of the receiver from any of these sources must be accounted for to this court until further orders are made.

The court at present requires no bond from the receiver in this district. Whether a bond will be needed will be a matter for further consideration on application by the parties.

I ought to say one thing I omitted in its proper place, and that is with reference to the effect of the present statutes of bankruptcy on statutes like that of New Jersey. That is a grave question, and one which is left absolutely open by the Supreme Court, so that no decision of any court prior to In re Watts & Sacks, 190 U. S. 1, 31, 32, 23 Sup. Ct. 718, 47 L. Ed. ——, is of the slightest consequence to my mind with reference thereto. I can see why the Supreme Court should hesitate. In the first place, it seems rather extraordinary that a state should not control the life of its own creature; but, what is a more

vital fact, the present bankruptcy statutes do not constitute a complete system so far as corporations are concerned, but they are incomplete and fragmentary. A corporation cannot go into bankruptcy, and stockholders cannot put it in. The only way it gets into bankruptcy is by the action of its creditors; and such a fragmentary and incomplete code as that ought, perhaps, not be accepted as superseding the carefully framed codes of the states, looking to the control and winding up of its own creatures in accordance with carefully developed local policies. At any rate, there is sufficient to suggest why the Supreme Court hesitated, and why, although it has declared over and over again that bankruptcy statutes supersede all insolvency laws so far as individuals are concerned, it left open the question whether those now in force affect such laws with regard to corporations. It is enough, however, for the present, for me to conclude that this is one of the class of grave questions, as I have already said, as to which the mere fact that there is a question, instead of preventing the granting of an injunction, or the appointing of a receiver, may require it. So far as this is concerned, and so far as concerns other questions which I have not touched on, including the general matter of the method of the administration of this trust, while I might differ from the Circuit Court for the District of New Jersey as to some details, and do differ from it, I must cast the responsibility on that court in the main. I cannot refuse this without aiding to throw the property into confusion.

I believe I have touched on all the questions practically in issue before me. If I have not, the counsel will have ample opportunity, taking the notes of what I have said, to call my attention to anything I have overlooked; and, if what I propose appears to be impracticable or unwise, they may ask me to revise anything which I have suggested.

The order will provide for the confirmation of Mr. Smith as receiver within this district, subject to the qualifications which I have stated.