EMPIRE DISTILLING CO. v. McNULTA.

(Circuit Court of Appeals, Seventh Circuit. January 4, 1897.)

No. 310.

1. PETITION OF INTERVENTION—AMENDMENT.

While a petition of intervention need not be as formal as a bill of complaint, yet it should exhibit all the material facts relied on, embodying, by recital or reference, so much of the record in the original suit as is essential;

and proceedings taken therein, after the filing of the petition, which would fortify the right of the intervener, should be incorporated in the petition by amendment, and, if this is not done, such proceedings cannot be noticed on a demurrer to the petition.

**2.** RECEIVERS—ADOPTION OF LEASES—ORDERS OF COURT.

A receiver does not become liable upon the covenants of a lease because of his position as receiver, but only by virtue of an election to adopt the lease, if he sees fit to make such election; and even if the lessee is solvent, and whatever the rights of the lessor against him or against his estate in the hands of the court, the lessor cannot force upon the receiver the adoption of the lease. Accordingly *held*, that when the receiver of a corporation had been instructed by the court, at his own request, to abandon a lease to such corporation, the fact that such corporation was really solvent afforded no reason for disregarding such order and directing the receiver to assume the lease.

**3.** SAME—PETITION FOR PAYMENT OF CLAIMS.

A petition asking that a receiver be directed to pay a claim, without distinctly alleging that he has funds in his hands properly applicable thereto, is insufficient.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

On the 28th day of January, 1895, John F. Olmstead and others filed their bill in the court below against the Distilling & Cattle-Feeding Company, wherein, as stockholders of the company, and by reason of certain matters charged in the bill, and on account of the alleged inability of the company to proceed with its business, and of its insolvency, a receiver was sought to be appointed of the property of the company, and the court was asked to administer its affairs, to wind up and dissolve the corporation, to convert its property into money, and to apply the same to the payment of its debts. On the same day the court below appointed receivers, of whom the appellee, John McNulta, is the successor, with the usual powers of receivers in like cases. Subsequently, on the 15th day of February, 1895, Chester H. Graves and others, judgment creditors of the Distilling & Cattle-Feeding Company, filed their bill against the company, of like character with the bill of Olmstead, and thereupon the two causes were consolidated, and the receivership extended to the consolidated cause. On the 29th of May, 1895, the receiver, John McNulta, reported to the court with reference to certain leases held by the Distilling & Cattle-Feeding Company as lessees, and among them the one in controversy in this suit, that it would not be profitable to pay rentals thereon, and recommended that he be authorized by the court to permit default to be made in the payment of rent under such leases, and upon the same day the court directed the receiver not to make any payments of rent thereunder, but to permit default to be made therein. On the 6th day of June, 1895, the intervener, the Empire Distilling Company, filed its petition in the consolidated cause, representing that on the 19th of August, 1887, the petitioner made a lease of certain real estate then occupied by distilleries to the P. H. Rice Distilling Company for the period of 25 years, the buildings thereon being then the property of the lessee, and for an annual rental of 6 per centum per annum upon the actual cash value of the demised lands, then fixed at $100,000, that is, for the first 5 years of the lease the rental to be $6,000 per annum, payable quarterly. The lease further provided that at the expiration of 5 years from the date of the lease, and every 5 years thereafter during the continuance of the lease, the property should be revalued at the request of either the lessor or lessee, and the same rate per cent. should be paid upon every such valuation as rental. The petition further charged that after the date of the lease the Distilling & Cattle-Feeding Company succeeded to all the rights and privileges of the P. H. Rice Distilling Company, took possession of the real estate described in the lease, became bound by the terms of the lease, and duly paid the rent until the 1st day of April, 1895, when it defaulted, and has since paid no rent. That on the 19th of December, 1892, pursuant to the terms of the lease, the value of the premises on the 8th day of August, 1892, was fixed by appraisers at the sum of $80,000, whereby, according to the terms of the lease, the rental became

and has since remained, at the annual sum of $4,800. That the Distilling & Cattle-Feeding Company had adopted the lease and appraisal and become duly bound by the terms thereof. It then alleged the proceeding in the suit referred to, alleged that it had no notice of any of the proceedings therein, was not a party thereto, and is not bound thereby. It also alleged that the Distilling & Cattle-Feeding Company was not insolvent, and that it had at all times been able in the usual and ordinary course of business to meet all its current liabilities without resorting to the proceedings which had been adopted, and set forth certain proceedings and statements by the receiver of the company and the so-called "reorganization committee," which it is claimed tended to prove the allegations of the petition in that behalf. The petition prays that the receiver may be ordered to answer its petition, and that he should be "instructed to pay to your petitioner the amount of rental fixed and due as aforesaid, the $1,200 due April 1, 1895, and $1,200 on the first day of each succeeding quarter." To this petition on the 15th day of June, 1895, the receiver filed his general demurrer. On the 5th day of July, 1895, upon the report of the receiver recommending an early sale of such of the distillery properties belonging to the company of which the receiver had taken possession, a decree of sale was entered directing the receiver to sell such properties upon the terms therein mentioned, and to report his doings to the court. The record further shows that on the 24th of July, 1895, a decree was entered in the cause which ascertained the facts found in the several bills of complaint to be true, and among other things that the complainants, Chester H. Graves and others, recovered a certain judgment on the 12th day of February, 1895, upon which a writ of fieri facias has been issued and returned nulla bona on the 26th day of February, 1895. It further found that, at the time of the filing of the bill of complaint of John F. Olmstead and others, the business of the defendant was being conducted at a loss; that it was without means or credit wherewith to borrow money sufficient to enable it to pay its obligations as the same matured, or to longer carry on or continue its business, and that it was then insolvent. The decree further found that on the 3d day of June, 1893, the attorney general of the state of Illinois filed in the circuit court within and for the county of Cook, in the state of Illinois, an information in the nature of a quo warranto against the defendant, the Distilling & Cattle-Feeding Company, to forfeit its charter upon the ground that it had been guilty of an abuse thereof. That on the 22d day of September, 1894, a decree was therein rendered adjudging and determining that the Distilling & Cattle-Feeding Company be, and it was thereby, ousted of all corporate rights and privileges; which decree was, on appeal to the supreme court of the state of Illinois, affirmed on the 13th of June, 1895. The circuit court of the United States, by its decree, directed that all persons having claims against the Distilling & Cattle-Feeding Company should file such claims with the master in chancery, who should take an account of the property, assets, and effects, and of all the liabilities of the company, and of all seeking to participate in the distribution of the assets of the company, and should report to the court the testimony and his conclusions thereon as to all claims objected to and upon which evidence should be heard. On the 27th day of August, 1895, the report of sale by the receiver came on to be heard by the court, and it thereby appeared that on the 14th of August, 1895, the properties of the company were sold to a reorganization committee upon a bid of $9,800,000, upon the terms specified in the decree of sale, to wit, that the reorganization committee should pay in cash such proportion of such bid as the total number of shares of stock of said Distilling & Cattle-Feeding Company not owned or controlled by the reorganization committee bore to the total capital stock of the Distilling & Cattle-Feeding Company, and should pay the balance of the purchase price as and when required by the court, to the extent that the same should be necessary for the payment, in addition to the costs of administration, of such claims then or thereafter filed which should upon final hearing be allowed and ordered paid. The decree of sale provided a lien upon the property described as security that the purchaser should pay the balance of such purchase price as the same should be required by order of the court. And, for the purpose of enforcing such lien in the event of failure on the part of the purchasers to pay such part or portion of the purchase money as the court should from time to time order, the court reserved to itself the authority to summarily retake possession of the properties, or any part

thereof, through its receiver, by an order to be entered to that effect, and resell the same upon such terms as the court should then decree. The decree of confirmation found that the reorganization committee on August 4, 1895, held or controlled 347,508 shares of the capital stock of the Distilling & Cattle-Feeding Company, and should therefore at that time pay in cash to the receiver on account of, and to apply on the bid of $9.800,000, pursuant to the provisions of the decree of sale of July 5, 1895, the sum of $69,776, being in the same proportion of such bid that 2,492 shares of the capital stock not owned or controlled by the reorganization committtee bore to the entire capital stock of the company; that that sum had been paid to the receiver and applied upon the bid and was held by the receiver subject to the order of the court. The decree confirms the report of sale, authorizes the execution of proper conveyances to the purchaser, and directs that the purchaser or its assigns shall pay the balance of the purchase price from time to time as the same shall be required by the order of the court, to the extent that the same shall be necessary to pay the costs of administration, and such claims as had been or should thereafter, by leave of court, be filed, and as should upon final hearing be allowed and ordered paid; and retained the power to retake and resell the property in the event of failure by the purchaser or its assigns to comply with any order of the court in that regard. The court directed that the cash payment of $69,776 be held and retained by the receiver as a separate fund, to abide the further order of the court. On the 26th of February, 1896, the demurrer to the intervening petition was sustained and the petition dismissed, to review which ruling this appeal is taken.

Edwin Walker and Arthur J. Eddy, for appellant.

John J. Herrick, Charles L. Allen, I. K. Boyesen, Levy Mayer, T. A. Moran, and Horace H. Martin, for appellee.

Before WOODS and JENKINS, Circuit Judges, and SEAMAN, District Judge.

JENKINS, Circuit Judge, after this statement of the facts, delivered the opinion of the court.

While a petition of intervention need not be as formal as a bill of complaint, and should perhaps be distinguished for brevity, it yet should exhibit all the material facts which are relied upon for the specific relief invoked, embodying, either by recital or by reference, so much of the record in the original suit in which the petition is filed as is essential to show a right to the particular relief demanded by the petition. Where, subsequently to the filing of the petition of intervention, proceedings have been had under the original bill which would fortify the right of the intervening petitioner, either to the particular relief demanded or to some other relief, the matter should be incorporated into the petition of intervention by amendment. In determining, therefore, the question of the relief, if any, to which the appellant, the Empire Distilling Company, intervener, is entitled, upon demurrer to its petition of intervention, we have not deemed ourselves at liberty to consider the proceedings subsequent to the filing of the petition of intervention, and which resulted in a sale of the properties of the Distilling & Cattle-Feeding Company and a decree by which the rights of the creditors of that company were protected; and this because these proceedings have been in no way incorporated into the petition and are not properly before us upon appeal from a decree dismissing the petition of intervention upon demurrer.

The claim of the appellant, as presented by its petition of intervention, in substance, is that, notwithstanding the order of the court of May 29, 1895, directing the receiver not to assume the lease between the appellant and the P. H. Rice Distilling Company, which it is alleged was adopted by the Distilling & Cattle-Feeding Company, and because, as is asserted, the latter company was in fact solvent, notwithstanding the bill of complaint charged its insolvency, those orders should be disregarded, and it is thereupon demanded that the receiver be instructed to assume the lease and to pay the fixed rental due and to accrue under the lease. The claim preferred is that, because of the alleged solvency of the Distilling & Cattle-Feeding Company, the receiver, as such, is bound to assume all the contracts of the company, to execute them so far as they remain unexecuted, and to discharge all liabilities which have accrued under them. We do not so understand the law to be. A receiver does not become liable upon the covenants of the lease because of his position as receiver, but because and only because of his own acts in respect thereto. He becomes liable when he has elected to assume the lease, or has taken possession of the demised premises, and continued in possession, under such circumstances as in the law would be equivalent to such an election. High, Rec. § 273; Com. v. Franklin Ins Co., 115 Mass. 278; Oil Co. v. Wilson, 142 U. S. 313, 323, 12 Sup. Ct. 235. He is allowed a reasonable time—a breathing space, so to speak—to investigate and determine the desirability of the adoption of the lease in the interest of the estate he represents; and this even when he has taken possession under the lease. Whatever may be the rights of the lessor as against the defendant whose estate has passed under receivership, or with respect to the payment of any claim arising under the lease out of that estate in the possession of the court, it is still true that the lessor cannot force upon the receiver, under any circumstances, the adoption of the lease. That is a matter for his judgment and decision under the order and direction of the court appointing him. This petition of intervention seeks substantially the specific performance of that lease by the receiver for a term of 25 years from the 19th day of August, 1887, with revaluation of the property during each 5 years of the term for readjustment of the rental. To effect this purpose the court below must needs retain jurisdiction of the cause during the entire period stated, and assume possession of the demised premises, although it might be most unprofitable in the interest of the creditors to do so. The method is impracticable and not to be sanctioned. Quain's Appeal, 22 Pa. St. 510.

The intervening petition also demands payment by the receiver of rent accrued and to accrue without any regard to funds in his hands, and without allegation that he has the present means to comply with the demand. While it is true that the petition alleges the solvency of the distilling company,—if we may properly regard such an allegation by one who comes in under a bill which alleges insolvency and seeks relief from a court which has taken possession of the property under such charge of insolvency,—it nowhere asserts that the receiver had reduced the assets into cash, so as to permit

payment of the claim; nor could it be permitted that other creditors should be anticipated by the petitioner in the payment of its demand. So that, whether this petition of intervention is to be regarded as one for the specific performance by the receiver of the lien in question, or one in payment of damages as a claim against the Distilling & Cattle-Feeding Company, it was equally insufficient.

We have said that we could not properly consider the subsequent proceedings in the cause upon this petition. If we could, it would not avail the appellant upon a petition of intervention directed against the receiver, asking specific action by him. The subsequent proceedings show the sale of certain properties of the Distilling & Cattle-Feeding Company, subject to a condition that the purchaser should pay in cash of the purchase price so much as should be required to discharge such claims filed, or which should thereafter by leave of the court be filed, as should upon final hearing be allowed and ordered paid. If the intervening petitioner has just claim against the estate which has thus passed under the decree to the purchaser, it has adequate remedy, not by petition against the receiver, but by petition against the purchaser for an order at foot of the decree determining and ascertaining the amount of its claim, and directing its payment by the purchaser. We are therefore for the present relieved from the consideration of the interesting question discussed at the bar, whether the decree of ouster of the corporate privileges and franchises of the Distilling & Cattle-Feeding Company absolved its estate from any claim by the appellant under the lease, arising after such ouster. That question would properly arise upon presentation of a claim against the estate. The decree will be affirmed.