PRIMOS CHEMICAL CO. v. FULTON STEEL CORPORATION.

(District Court, N. D. New York. December 2, 1918.)

1. COURTS &⫝̸266—FEDERAL COURTS—JURISDICTION.

Under Judicial Code, §§ 69–115 (Comp. St. 1916, §§ 1051–1106), and in view of section 1 (section 968), the jurisdiction of the several District Courts is coextensive with the boundaries of the judicial district, and extends no further, save as Congress has expressly extended it.

2. COURTS &⫝̸24—FEDERAL COURTS—JURISDICTION.

While jurisdiction of the person can be given by consent of the defendants, jurisdiction of the subject-matter cannot be conferred on any court, either by assumption of jurisdiction, or consent of the parties, or request of all of the parties.

3. COURTS &⫝̸24—FEDERAL COURTS—JURISDICTION.

When diversity of citizenship is the ground of federal jurisdiction, if diversity of citizenship does not in fact exist, there is an entire absence of jurisdiction, which cannot be waived by the parties, and the court will dismiss on its own motion.

4. COURTS &⫝̸276—FEDERAL COURTS—JURISDICTION.

Under Judicial Code, § 52 (Comp. St. 1916, § 1034), relating to where a state contains more than one federal district, etc., in suits not of a local nature, if there be but one defendant, he may waive being sued in the wrong district, but where there are two or more defendants residing in different districts, then to reach the defendants not residing in the district, suit must be brought as the statute directs, etc.

5. COURTS &⫝̸269—LEASES—NATURE OF PROPERTY THEREIN—"PERSONAL PROPERTY."

A lease of real estate for a term of years is "personal property," and is not property of a fixed nature or character, within Judicial Code, § 55 (Comp. St. 1916, § 1037), relating to district of suit in local actions where land or subject-matter of a fixed character lies partly in one district and partly in another.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Personal Property.]

6. RECEIVERS &⫝̸207—POWERS OF—EXTENT.

A receiver's power is only coextensive with that of the court which gave him his character, and cannot be asserted as a matter of right beyond the territorial jurisdiction of such court; so a receiver appointed by the District Court for the Southern District of New York has no power to take possession of property of the defendant in the Northern District, etc.

7. COURTS &⫝̸269 — FEDERAL COURTS — JURISDICTION — "PROPERTY OF FIXED CHARACTER OR NATURE."

Though a corporation which had its domicile and carried on its business in the Northern District of New York admitted the jurisdiction of

the District Court of the Southern District, wherein it had a small bank account and had leased offices, over a suit for the appointment of a receiver, *held*, that the District Court of the Southern District was without jurisdiction, under Judicial Code, § 55 (Comp. St. 1916, § 1037); the suit being of a local nature, and no property in that district being of a fixed character or nature.

8. COURTS ⬤269—DOMICILE—PROPERTY OF A FIXED CHARACTER.

The defendant corporation *held* to have its domicile and property of a fixed character or nature wholly in the Northern District of New York, and none in the Southern District, where suit for the appointment of a receiver was begun, so the District Court of the Southern District could not take jurisdiction, under Judicial Code, § 55 (Comp. St. 1916, § 1037).

9. COURTS ⬤269—APPOINTMENT OF RECEIVERS—"LOCAL ACTION."

A suit for the appointment of receivers to conserve and protect the assets of a corporation is one of a local nature, within Judicial Code, § 54 (Comp. St. 1916, § 1036), and under section 55 (section 1037) cannot be maintained in a district wherein the corporation was not domiciled and had no property of a fixed nature.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Local Action.]

10. COURTS ⬤269—JURISDICTION—"PROPERTY OF A FIXED CHARACTER"—DEPOSITS.

Money deposited becomes the property of the bank, and the relation between the bank and depositor is simply that of debtor and creditor, so a deposit is not "property of a fixed character," within Judicial Code, § 55 (Comp. St. 1916, § 1037).

11. RECEIVERS ⬤91—POWERS OF—LEASES.

Receivers of corporation are at liberty to occupy leased premises until they elect whether to retain or abandon; for if the lease is assignable, it may be sold like other personal property, and if not, the receivers may at their option abandon the same.

12. COURTS ⬤264(1)—JURISDICTION—ANCILLARY JURISDICTION.

Where the District Court for the Southern District of New York was without jurisdiction of a suit, the District Court for the Northern District cannot rightfully exercise ancillary jurisdiction therein, for that presupposes jurisdiction in the Southern District.

13. MANDAMUS ⬤31—COURTS—PROCEEDING WITH CAUSE.

A court can be compelled to act one way or the other in matters properly before it, for that is its duty; but it cannot be compelled to make a particular decision, when it has power or discretion to act otherwise.

14. COURTS ⬤264(3)—JURISDICTION—RECEIVERS.

Where a court appointing a receiver had no jurisdiction, it cannot claim jurisdiction over property seized without the jurisdiction; so the fact receivers appointed by the District Court of the Southern District of New York have taken possession of property of the defendant in the Northern District does not give that court jurisdiction, where it exceeded its jurisdiction, etc., in appointing receivers, etc.

15. COURTS ⬤264(1)—JURISDICTION—ANCILLARY JURISDICTION.

When want of jurisdiction of the court in the main suit appears, it is the duty of a court asked to exercise ancillary jurisdiction to raise the question itself, and to decline to act if the want of jurisdiction in that court appears.

In Equity. Application by the Primos Chemical Company for the appointment of receivers of the property of the Fulton Steel Corporation, as ancillary receivers, based on an ancillary bill, in which another creditor intervened, denying the jurisdiction of the District Court wherein the original suit was brought. Application denied.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

This is an application by the Primos Chemical Company, the above-named complainant, a creditor of defendant, for the appointment of the three receivers named by the United States District Court in the Southern District of New York of all the property of defendant as ancillary receivers of the property of the defendant in the Northern District of New York. The application is based on an ancillary bill filed in the Northern District, which sets out the pendency of the action and the action of the court in the Southern District, and which allegations the plaintiff refuses, on request so to do, to eliminate from such bill filed in the Northern District.

Another creditor of the defendant has appeared herein by intervention, and has filed an answer denying all allegations of the ancillary bill filed in the Northern District which would give the District Court in the Southern District jurisdiction of the subject-matter of the suit, and denies jurisdiction in that court to entertain the suit and appoint receivers, and of this court to recognize that action or take any proceedings ancillary thereto, so far as property of the defendant in the Northern District of New York is concerned. The intervening creditor does not object to the court in the Northern District taking jurisdiction of an independent bill filed in that district by a proper party complainant asking for receivers, or to the appointment of receivers by this court in such an independent and primary action in the Northern District.

In the action commenced in the Southern District, as well as in the ancillary action brought in the Northern District, the defendant appears in person by its president, not by attorney, and files an answer as follows: "The defendant above named herein admits each and every allegation contained in the said bill of complaint and submits its right in the premises to the protection of the court. Fulton Steel Corporation, by Harry C. Beaver, President. Attest: Wm. M. Bailey, Vice President."

The answer of the intervener also sets up facts showing that the principal place of business of the defendant corporation is and always has been at Fulton, in the Northern District of New York, where all of its real estate and all of its property of a fixed nature or character is situated, and that it had none and has none in the Southern District.

The intervening creditor in the Northern District also files opposing affidavits, showing, if the allegations be true, that the Fulton Steel Corporation is a corporation of the state of New York, organized and doing business as a manufacturing corporation at the city of Fulton, Oswego county, N. Y., in the Northern District of New York, and that in its articles of incorporation its principal place of business is stated to be at Fulton aforesaid, and that in fact its principal place of business is and always has been at the city of Fulton, Northern District of New York, and that all its real property and all its property of a fixed nature or character and the greater part of its personal property was when the suit in the Southern District was instituted, and now is, in the Northern District of New York, and that such corporation had and has no real estate or property of a fixed character or nature in the Southern District of New York.

Wm. S. Elder, of Auburn, N. Y., for complainant.

Costello, Burden, Cooney & Walters and Chas. V. Byrne, all of Syracuse, N. Y., for intervening creditor.

RAY, District Judge (after stating the facts as above). The facts in this case are that a few years since the Fulton Steel Corporation was duly organized and incorporated under and pursuant to the laws of the state of New York as a manufacturing corporation for the purpose of manufacturing and selling certain steel products. Its articles of incorporation stated that its principal place of business was to be at Fulton, in Oswego county, N. Y., and at that city its principal place of business, active operations, and bookkeeping and offices have always been located and carried on. It became the owner of certain real es-

tate at Fulton, on which was and is its principal and only plant, being its manufacturing plant and offices and storage rooms. This plant, with buildings and machinery thereon, was and is worth from $350,-000 to $500,000. In New York City there were, it is said, rented three small rooms in one of the large office buildings in that city, furnished with desks and chairs, and at which offices stock in the corporation was sold. The corporation kept a bank account in one of the banks of the city of New York, in which was deposited about $4,000 when the bill in the Southern District was filed.

This was and is the only property of the defendant corporation in the Southern District of New York when the bill was filed there. That was the only business of the corporation being carried on there. It was incidental and collateral to the business of the corporation, which it was organized to carry on and which it was conducting, and constituted no part of its manufacturing business or operations. The bill filed in the Southern District alleged the involved financial condition and difficulties of the corporation; its large indebtedness, which it was unable to meet; that a suit had been brought against it, and that others were threatened; and various other facts showing a necessity for the appointment of a receiver, not of the assets and small rented offices in the city of New York, but of the corporation and all its assets and property, of every name, everywhere, and the taking thereof by such receiver for the purpose of protecting and conserving such assets and property. It was not an action in personam, or to recover a personal judgment against the defendant, and did not purport to be such, but was and is what is known as an action to conserve assets, and one looking to the sale of all the property. This was the object of the action and such was the subject-matter involved. That bill was silent as to the location or situs of the property of the defendant corporation, except it stated that the defendant had *an* office in the city of New York.

Later, when the question of jurisdiction was raised, an amendment to that bill was filed, alleging that the bank account mentioned was in the city of New York, and that defendant had a lease for a term of years of the three offices mentioned. Another creditor intervened in that suit specially to raise the question of jurisdiction, and did raise it, and moved to dismiss on the ground of want of jurisdiction in the District Court of the Southern District of New York of the subject-matter of the suit. That motion has been denied on the grounds, as I read the memorandum of opinion, that an intervening creditor cannot raise the question, as defendant appeared and submitted to the jurisdiction, and that there was some property in the Southern District, to wit, the lease of the three rooms and the bank account, when the bill was filed, over which that court had and has jurisdiction, and hence that it has jurisdiction, not only of the defendant, but of the subject-matter of the suit. The learned judge who heard and decided the motion, and who wrote the memorandum referred to, seems to concede that the court in the Southern District had and has no jurisdiction over the property in the Northern District, but contends that by ancillary proceedings and the appointment of ancillary receivers in

the Northern District the whole property and subject-matter should, can, and will be brought in and acted upon in the Southern District. If this be so, then actions of a local nature and character occupy the same position, as to jurisdiction, as do actions in personam, substantially.

[1] Questions of jurisdiction in the United States courts are not free from perplexities. Article 3, § 1, of the Constitution provides that—

"The judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish."

Section 2 of the same article provides that—

"The judicial power shall extend to all cases, in law and equity * * * between citizens of different states," etc.

These are limitations on the judicial power. Pursuant to the authority thus conferred, Congress has established in each of the states of the United States one or more judicial districts (Judicial Code [Act March 3, 1911, c. 231] c. 5, §§ 69–115, 36 Stat. 1105–1130 [Comp. St. 1916, §§ 1051–1106]), and has also divided the United States into judicial circuits. The boundaries of these districts and circuits are defined. The Congress has also provided for the appointment of one or more District Judges in each of such judicial districts (chapter 1, § 1, Judicial Code [Comp. St. 1916, § 968]), and for the appointment of Circuit Judges in each of the judicial circuits. Each District Judge must be an actual bona fide resident of the district in and for which appointed. The jurisdiction of each of these District Courts is coextensive with the boundaries of the judicial district in and for which it is established or created, and extends no further, except in those cases where the Congress has expressly extended it. The Judicial Code points out these cases.

The District Judges so appointed cannot act as such and exercise their judicial powers and functions outside their respective districts, except in those cases specially provided for by acts of Congress, and these cases are pointed out in the Judicial Code. "The circuit court (now District Court) of each judicial district sits within and for that district, and its jurisdiction as a general rule is bounded by its local limits." Toland v. Sprague, 12 Pet. 300, 328 (9 L. Ed. 1093); Devoe Mfg. Co., Petitioner, 108 U. S. 401, 2 Sup. Ct. 894, 27 L. Ed. 764; Barrett v. United States, 169 U. S. 218, 221, 18 Sup. Ct. 327, 42 L. Ed. 723.

[2] There is a well-defined distinction between actions in personam and actions of a local character or nature, where the court and judgment or decree is to act upon specific real property or property of a fixed nature or character. There is such a thing as jurisdiction of the person which can be given by consent of the defendant, he waiving his right to be sued in a given district, and there is such a thing as jurisdiction of the subject-matter of the suit, which cannot be conferred on any court by either assumption of jurisdiction or by consent of the parties, or of either or any of them, or by request of all

the parties to the suit.   Minnesota v. Northern Securities Co., 194 U. S. 48, 62, 24 Sup. Ct. 598, 48 L. Ed. 820; Mansfield, etc., v. Swan, 111 U. S. 379, 4 Sup. Ct. 510, 28 L. Ed. 462; Parker v. Ormsby, 141 U. S. 81, 11 Sup. Ct. 912, 35 L. Ed. 654.

[3] When diversity of citizenship is the ground of federal jurisdiction, if diversity of citizenship does not in fact exist, there is an entire absence of jurisdiction, which cannot be waived by the parties, and the court will dismiss of its own motion.   Shaw v. Quincy, etc., 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768; Empire Coal Co. v. Empire Mining Co., 150 U. S. 163, 14 Sup. Ct. 66, 37 L. Ed. 1037.

[4] Section 52 (chapter 4) of the Judicial Code (Comp. St. 1916, § 1034) provides that—

"When a state contains more than one district [and New York contains four districts], every suit not of a local nature, in the District Court thereof, against a single defendant, inhabitant of such state, must be brought in the district where he resides; but if there are two or more defendants, residing in different districts of the state, it may be brought in either district, and a duplicate writ may be issued against the defendants, directed to the marshal of any other district in which any defendant resides."

This provision relates to suits and actions in personam, and excludes actions of a local nature.   In suits not of a local nature, if there be but one defendant, he may waive being sued in the wrong district, or consent to being sued anywhere; but when there are two or more defendants, residing in different districts of the state, then to reach the defendants not residing in the district where the suit is brought it must be brought as the statute directs, unless the other defendants waive or consent.

[5-14] Section 54 of the Judicial Code (Comp. St. 1916, § 1036) provides for the bringing of a suit of a local nature when the defendant resides in a different district in the same state from that in which the suit is and must be brought, for suits of a local nature must be brought in the district in which the subject-matter of the suit is located or situated, and section 54 provides that in such case the plaintiff may have original and final process against the defendant in any district of the state in which such defendant resides.

Then comes section 55 of the Judicial Code (Comp. St. 1916, § 1037), which reads as follows:

"Any suit of a local nature, at law or in equity, where the land or other subject-matter of a fixed character lies partly in one district and partly in another, within the same state, may be brought in the District Court of either district; and the court in which it is brought shall have jurisdiction to hear and decide it, and to cause mesne or final process to be issued and executed, as fully as if the said subject-matter were wholly within the district for which such court is constituted."

Here we have a provision for the bringing of a suit of a local nature in either of two or more districts in the same state, and such right and jurisdiction is limited to cases where "the land or other subject-matter of a fixed character lies partly in one district and partly in another, within the same state."   This means of course the land and buildings thereon which, as here, is the subject-matter of the suit, or, if there be no land, when the subject-matter is of a fixed character,

such as fixtures attached to real estate, or buildings or structures rightfully erected on land not owned by the party, and which may be removed by the party erecting them. In such a case the suit may be brought in either district of the state where such property—"subject-matter"—is in part situated. Leasehold interests in land are personal property. Eidman v. Baldwin, 206 Fed. 428, 430, 124 C. C. A. 310 (C. C. A., 2d Circuit). A lease of real estate for a term of years is personal property. Broadwell v. Banks (C. C.) 134 Fed. 470.

In 3 Pom. Eq. Jur. § 1318, it is said:

"Where the suit is strictly local, the subject-matter specific property, and the relief, when granted, such that it must act directly upon the subject-matter, and not upon the person of the defendant, the jurisdiction must be exercised in the state where the subject-matter is situated. Northern Indiana R. Co. v. Michigan Cent. R. Co., 15 How. 233, 242 [14 L. Ed. 674]."

In Baltimore Building & Loan Association v. Alderson, 90 Fed. 142, 32 C. C. A. 542, the case and holding of the court was as follows:

"A resident and citizen of Maryland, who was a stockholder in a West Virginia corporation, brought a suit in the federal court in West Virginia against the corporation for the appointment of a receiver for its property, which was situated in Maryland, with authority to complete and furnish an unfinished hotel building thereon, and to issue receiver's certificates therefor. Lienholders who were citizens of Maryland were made defendants, but in an amended bill only the corporation was named as defendant. A receiver was appointed, who completed the building, issuing receiver's certificates for the cost. The Maryland lienholders, on their application, were permitted to become parties and to prove their liens. Under a subsequent order the property was sold, and an order distributing the proceeds made, which gave the receiver's certificates priority. *Held*, that the lienholders were necessary parties to the suit, and being citizens of the same state as complainant, and the property being situated outside of its district, the court was without jurisdiction, and the entire proceedings were coram non judice and void."

That decision rests in fact on the proposition that the federal court in the district of West Virginia where the corporation was domiciled had no jurisdiction over the real property of such corporation situated in the state of Maryland and could not confer power on its receiver appointed in West Virginia to incumber that property by receiver's certificates. The court said:

"It is more questionable whether the court in this case could put its receiver in control of realty situate in another district. * * * But an order appointing a receiver of realty has no extraterritorial operation, and cannot affect the title to real property which is located beyond the jurisdiction of the court by which the order was made. See Schindelholz v. Cullum, 5 C. C. A. 301, 55 Fed. 885, and 12 U. S. App. 242. See, also, Booth v. Clark, 17 How. 322 [15 L. Ed. 164]. In the case before us a receiver was appointed solely to take charge of and manage realty in another district, notwithstanding the fact that certain indispensable parties were not within the jurisdiction of the court. An order for sale of the same realty was made; the property not being within the jurisdiction, and the parties not being legally present. The suit was of a local nature; its object being, as stated in the original bill, to have a receiver appointed to take charge of an hotel in Maryland, with authority to borrow money on receiver's certificates to complete and furnish it, and then to lease it to a tenant. The amended bill, filed after the issue of the receiver's certificates, states its object to be the continuance of the possession and charge of the hotel property by the receiver until the sale

asked for was had. The whole proceeding was coram non judice. The receiver was authorized to incumber property, outside of the judicial district of the court which appointed him, with debts declared to be prior to the vested liens; the holders of these liens not consenting, and not being within the jurisdiction of the court."

In Schindelholz v. Cullum, 55 Fed. 885, 889, 5 C. C. A. 293, 301, the court said:

"But an order appointing a receiver of realty has no extraterritorial operation. and cannot affect the title to real property which is located beyond the jurisdiction of the court by which the order was made. Booth v. Clark, 17 How. 322-328 [15 L. Ed. 164]. Such orders, therefore, only operate in personam, and upon those persons who are so related to the court, either as parties to the litigation, or by virtue of residence and citizenship, that they are bound to yield obedience to its orders."

In 1 Clark on Receivers, p. 78, § 53, the same is said.
In 34 Cyc. 484, it is said:

"And the rule, broadly stated, may be said to be that a receiver's power is only coextensive with that of the court which gave him his character, and cannot be asserted as a matter of right beyond the territorial jurisdiction of such court."

In Booth v. Clark, 17 How. 322, 328 (15 L. Ed. 164), it is held:

"An order appointing a receiver of realty has no extraterritorial operation, and cannot affect the title to real property which is located beyond the jurisdiction of the court by which the order was made."

This case of Booth v. Clark was expressly approved in Hale v. Allinson, 188 U. S. 56, 68, 23 Sup. Ct. 244, 47 L. Ed. 380, and again in Great Western M. & M. Co. v. Harris, 198 U. S. 561, 574, 576, 577, 25 Sup. Ct. 770, 49 L. Ed. 1163. In its opinion in the Harris Case the Supreme Court says:

"It will thus be seen that the decision in Booth v. Clark rests upon the principle that the receiver's right to sue in a foreign jurisdiction is not recognized upon principles of comity, and the court of his appointment can clothe him with no power to exercise his official duties beyond its jurisdiction. The ground of this conclusion is that every jurisdiction, in which it is sought by means of a receiver to subject property to the control of the court, has the right and power to determine for itself who the receiver shall be, and to make such distribution of the funds realized within its own jurisdiction as will protect the rights of local parties interested therein, and not permit a foreign court to prejudice the rights of local creditors by removing assets from the local jurisdiction without an order of the court or its approval as to the officer who shall act in the holding and distribution of the property recovered. * * * It is doubtless because of the doctrine therein declared that the practice has become general in the courts of the United States, where the property of a corporation is situated in more than one jurisdiction, to appoint ancillary receivers of the property in such separate jurisdictions. It is true that the ancillary receiverships are generally conducted in harmony with the court of original jurisdiction, but such receivers are appointed with a view of vesting control of property rights in the court in whose jurisdiction they are located. If the powers of a chancery receiver in the federal courts should be extended so as to authorize suits beyond the jurisdiction of the court appointing him, to recover property in foreign jurisdictions, such enlargement of authority should come from legislative and not judicial action."

In Northern Ind. R. Co. v. Mich. Cent. R. Co., 15 How. 233, 242 (14 L. Ed. 674), the court said:

"The jurisdiction of the Circuit Court of the United States is limited to controversies between citizens of different states, except in certain cases, and to the district in which it sits. In this case we shall consider the question of jurisdiction in regard to the district only. In all cases of contract, suit may be brought in the Circuit Court where the defendant may be found. If sued out of the district in which he lives, under the decisions he may object; but this is a privilege which he may waive. Wherever the jurisdiction of the person will enable the Circuit Court to give effect to its judgment or decree, jurisdiction may be exercised. But wherever the subject-matter in controversy is local, and lies beyond the limit of the district, no jurisdiction attaches to the Circuit Court, sitting within it. An action of ejectment cannot be maintained in the district of Michigan for land in any other district. Nor can an action of trespass quare clausum fregit be prosecuted, where the act complained of was not done in the district. Both of these actions are local in their character, and must be prosecuted where the process of the court can reach the locus in quo."

In the instant case the real property, plant, and business of the defendant corporation is not where the process or judgment of the court in the Southern District can reach it, for it is beyond its jurisdiction in the Northern District of New York. The District Court in the Southern District cannot take possession of and run that business and plant, for no part of it is in that district.

These cases settle beyond all controversy the proposition that the receivers appointed in the District Court in the Southern District of New York had no right or power to take possession of the property and business of the defendant corporation in the Northern District, or to execute and deliver receiver's certificates and make them a lien or charge on the property of such corporation situate in that district.

It is equally clear that the District Court in the Southern District of New York is not the court of main and principal jurisdiction. It will hardly be contended, I think, that a creditor, by going with the defendant, a corporation, and represented by its president, into a district where it does no business, such as it was organized to carry on at its domicile in another district in the same state, and where it has no property, except a small bank account, and where it rents two or three small offices for selling stock of the company, and there in the district foreign to its domicile, acting in concert with defendant, obtaining the appointment of a receiver, draws to the court of that district the main and controlling power and jurisdiction in administering the assets and affairs of the corporation, when it appears and cannot be denied (1) that the domicile of the defendant corporation was and is in such other district; (2) that at such domicile in such other district the main offices and place of business were and are located in fact and by the article of incorporation; (3) that in such other district all the real estate and personal property of the corporation, except a small bank account and a lease of three small office rooms, such property at the domicile aggregating in value from $300,000 to $500,000, was and is situated; and (4) that all its manufacturing, it being a manufacturing corporation, was and is carried on at such domicile in such other district.

This suit is one to conserve and protect the assets of the corporation and to protect all interests, and it would seem plain enough that such a suit is one of a local nature, as the avowed purpose of the bill is, through a receiver, to take hold of, protect, and preserve the assets, real and personal, carry on the business, and it may be dispose of same and distribute the proceeds to creditors and stockholders. The object of the action cannot be accomplished, unless the court takes the property into its custody and possession, and this it cannot do unless it has jurisdiction of it, power to take hold and manage it, and dispose of it, not merely direct the corporation in the matter as to its management and disposition. The court must operate on the property itself directly, and not by directing and coercing the defendant corporation. In V. & G. R. Co. v. Atlanta & F. R. Co. (C. C.) 49 Fed. 608, 15 L. R. A. 109, it was expressly held that such an action is one of a local nature. In Pomeroy's Equity Jurisprudence (3d Ed.) § 1318, it is said:

"On the other hand, where the suit is strictly local, the subject-matter is specific property, and the relief when granted is such that it must act directly upon the subject-matter, and not upon the person of the defendant, the jurisdiction must be exercised in the state where the subject-matter is situated."

Such is this case. On this subject, see Columbia River Packers' Ass'n v. McGowan, 219 Fed. 376, 377, 134 C. C. A. 461, where jurisdiction was sought to be sustained over property in another district and state on the ground the court had jurisdiction of the parties. The court held jurisdiction of the parties did not give jurisdiction of the subject-matter of the suit.

We come, then, to the remaining proposition: Was there any property of a fixed nature or character, within the meaning of the statute, in the Southern District of New York, where the suit was instituted, for, if not, there was no jurisdiction, as the suit could not be brought there by consent of defendant? That a bank account is property of a fixed nature or character cannot be claimed with any degree of plausibility. The money deposited becomes the property of the bank, and the relation between the bank and depositor is simply that of debtor and creditor. The bank in which the alleged $4,000 was deposited owed the defendant corporation that amount of money. The debt is a mere chose in action, and not property of a fixed character, within the meaning of the statute.

What of the lease of the three small rooms in one of the large office buildings of the city? On the appointment of receivers they are at liberty to take possession of rooms rented, and occupy until they shall determine whether to retain or abandon, or to abandon at once. They are under no obligation to retain and occupy. It is not even shown or alleged here that they could assign—that is, sell the lease. It is not shown it was a written lease. If assignable, such a lease can be sold like any other article of personal property, for it is personal property, as we have seen, and if not assignable, or whether assignable or not, it is optional with the receivers to abandon it. Sunflower Oil Co. v. Wilson, 142 U. S. 313, 322, 12 Sup. Ct. 235, 35 L. Ed. 1025; Quincy, etc., Railroad Co. v. Humphreys, 145 U. S. 82, 99, 12 Sup.

Ct. 787, 36 L. Ed. 632; 1 Clark on Law of Receivers, p. 597, § 521; Dietrich v. O'Brien, 122 Md. 482, 89 Atl. 717; Empire Distilling Co. v. McNulta, 77 Fed. 700, 23 C. C. A. 415; In re Mullings Clothing Co., 238 Fed. 58, 65, 151 C. C. A. 134, L. R. A. 1918A, 539; Intercontinental Rubber Co. v. Boston & M. R. R. (D. C.) 245 Fed. 127. The lease is a mere contract, which the receiver in equity cases may affirm or disaffirm. Penn Steel Co. v. N. Y. City Ry. Co., 198 Fed. 721, 728, 117 C. C. A. 503 (C. C. A., 2d Circuit), and cases cited in 1 Clark on Receivers, p. 597. I am unable to find any case, and am not pointed to any, where it is held that a lease of rooms is "property of a fixed nature or character." Property of a fixed character must be of the kind known as "personal property of an immovable character." 32 Cyc. 666, where it is said:

"To define personal property as consisting of movables is not, even in the sense of things personal, strictly accurate; for there may be personal property of an immovable character, such as growing crops, standing trees, sold, but not actually severed from the soil, and buildings and other structures affixed to the soil, but with the understanding that they may be removed."

In this case creditors with upwards of $100,000 of claims against the defendant corporation are protesting in this court, and challenging the jurisdiction of the United States District Court in the Southern District of New York to appoint receivers of and over the property of the defendant in the Northern District of New York, and take possession of, manage, and eventually sell same, and administer the proceeds, or to authorize receiver's certificates and make same a lien or a charge on such real property. These creditors claim and insist that the court in the Northern District of New York, where substantially all the property is situated, and where all of the real property and all the property of a fixed character is situated, and where the domicile of the corporation is, and where all the manufacturing business is being carried on, cannot and should not entertain or exercise any ancillary jurisdiction, treating the District Court in the Southern District of New York as a court of original and primary jurisdiction, and its orders of any validity whatsoever, and so merely ratify, or undertake to ratify, and approve and validate orders made in that district respecting the property in the Northern District and receiver's certificates issued under such orders.

These creditors insist that this court cannot under the circumstances validate such orders and that on a proper bill in equity it should exercise its own primary and independent jurisdiction over the subject-matter, and that if it does not it is refusing to perform its duty, exercise its jurisdiction, and is abrogating in favor of the District Court in the Southern District, a thing it cannot legally do. That course of exercising original jurisdiction this court has offered to pursue, and is willing to pursue, and regards it its duty to pursue, but is met by the proposition that, if it acts at all, it must exercise ancillary powers and jurisdiction only, and treat the court in the Southern District of New York as the court of principal and primary jurisdiction, and recognize the power and jurisdiction of that court to appoint receivers of the property in the Northern District, to manage it under direction of that court and authorize them to issue receiver's certificates (which

they have done) and make such certificates a charge and lien on such property in the Northern District.

It is also insisted that as the defendant corporation has voluntarily appeared in the suit brought in the Southern District and admitted all the allegations of the complaint, the question of jurisdiction and power of that court cannot be raised or questioned by other creditors, and that this court cannot take notice of the facts when brought to its attention; in other words, that it must exercise an ancillary jurisdiction only, and in a suit the subject-matter of which is wholly in the Northern District, for the reason the defendant corporation consented to be sued in the Southern District and has appeared and submitted to the jurisdiction. This, of course, assumes that the consent of the defendant gave jurisdiction to the court in the Southern District over a subject-matter not otherwise within its jurisdiction, but constituting a local action, and which subject-matter is wholly in the Northern District. This I do not understand to be the law. It is the duty of this court to exercise its power and jurisdiction, when it has jurisdiction and is properly called upon to act, and to exercise its discretion the one way or the other in discretionary matters. A court can be compelled to act the one way or the other in matters properly before it, for it is its duty so to do; but it cannot be compelled to make a particular or specific decision one way when it has power or discretion to act the other.

Phelps v. McDonald, 99 U. S. 298, 308, 25 L. Ed. 473, may be misleading, unless properly read in connection with the facts. That was a suit to compel the doing by defendant of a certain act with respect to certain property not within the jurisdiction of the court, and the court held that in such case the defendant, who was within the jurisdiction of the court, could be compelled to obey the order of the court respecting same. The syllabus properly expresses the breadth and effect of the decision. That was not an attempt by the court in a suit in equity to take possession of, hold, manage, and dispose of property, real and personal, which was beyond its jurisdiction for the benefit of creditors and stockholders, but to act on the person of the defendant. Such, also, are the cases of Philadelphia Co. v. Stimson, etc., 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570; and Stone v. United States, 167 U. S. 178, 17 Sup. Ct. 778, 42 L. Ed. 127. An action to restrain a trespass is quite different from an action to recover the value of timber.

In Picuet v. Swan, 5 Mason, 35, 40, Fed. Cas. No. 11134, Story, J., said:

"A court created within and for a particular territory is bounded in the exercise of its power by the limits of such territory. It matters not whether it be a kingdom, a state, a county, or a city, or other local district. If it be the former, it is necessarily bounded and limited by the sovereignty of the government itself, which cannot be extraterritorial; if the latter, then the judicial interpretation is that the sovereign has chosen to assign this special limit, short of his general authority. It was doubtless competent for Congress to have authorized original as well as final process to have issued from the Circuit Court and run into every state of the Union. But it has conferred no such general authority." We must, therefore, determine the territorial extent of the jurisdiction of the federal courts from the United States statutes and decisions.

254 F.—30

And in that case, as in Johnson v. Gibson, 116 Ill. 294, 6 N. E. 205, and Tenth Nat. Bank v. Construction Co., 227 Pa. 354, 362, 76 Atl. 67, 136 Am. St. Rep. 884, it is expressly held that—

"When a court of equity attempts to act directly upon property, whether real or personal, by its decree, it is, in the absence of statutory regulation, essential to the power of the court to act that the property to be affected be within the territorial jurisdiction of the court."

And in Johnson v. Powers, 139 U. S. 156, 159, 11 Sup. Ct. 525, 526 (35 L. Ed. 112), it is held:

"A judgment in rem binds only the property within the control of the court which rendered it."

"Courts may not seize property without jurisdiction, and then claim jurisdiction over the property because it is in the possession of the court." Hawes v. First National Bank, 229 Fed. 51, 59, 143 C. C. A. 645, 653 (C. C. A., 8th Circuit).

And in that case it is also held that—

"Where a court appointing a receiver had no jurisdiction, it cannot claim jurisdiction over the property seized without jurisdiction and pay costs and expenses of the receivership therefrom."

Also held:

"That although no question of jurisdiction was raised by the parties, it was the duty of the court to take notice of the defect." 1 Clark on Receivers, § 70, p. 97.

The fact that the receivers appointed by the District Court of the Southern District of New York have taken actual possession of the plant, real estate, and personal property of the defendant corporation at Fulton, in the Northern District of New York, and are running the plant, does not give that court jurisdiction, or even possession of the property; nor does that fact require this court in the Northern District, or authorize it, to exercise ancillary jurisdiction. The court in the Northern District has full and complete jurisdiction notwithstanding, if it had such jurisdiction in the first instance, and the court in the Southern District did not. It is the same question, viz.: Was there property of a fixed character in the Southern District? The property is still within the Northern District of New York, where it always has been. No part of that property has been removed to the Southern District.

Lewis et al. v. American Naval Stores Co. (C. C.) 119 Fed. 391, decided in December, 1902, is relied on by the complainant in this suit; but the case presents no such questions as are involved here. In that case the defendant, American Naval Stores Company, was a corporation organized under and pursuant to the laws of the state of New Jersey, but it carried on no business in that state, and, so far as appears, had no property in that state. This corporation had complied with the laws of the state of Alabama to enable it to do business in that state, and had designated a person there on whom service of process could be made. The assets of the corporation consisted of real estate, part of which was situated in the Southern District of Alabama and the remainder in the Eastern District of Louisiana. This fact

alone gave to the District Court of either district jurisdiction of the subject-matter, as we have seen. It also had personal property in Florida, Illinois, Kentucky, and Alabama. D. R. Lewis, a citizen of North Carolina, and W. P. Lewis, a citizen of the Southern District of Alabama, on the 25th day of September, 1902, filed a bill in equity in the United States Circuit Court of the Southern District of Alabama, where a substantial part of the real estate of the corporation and some of its personal property were located, and asked a receiver. The defendant American Naval Stores Company appeared in that action and filed its answer, admitting the allegations of the complaint and consenting to the appointment of a receiver. Thus there was jurisdiction in that court of both the defendant and of the subject-matter of the suit. A receiver was appointed September 26, 1902, by one of the Circuit Judges, pursuant to the prayer of the bill, and such receiver duly qualified. On that day, September 26th, an ancillary bill in the same matter for the same relief was forwarded to be filed by the same plaintiffs against the same defendants in the Eastern District of Louisiana, where the balance of the property of a fixed character, real estate, was located, and an order was made assuming ancillary jurisdiction and appointing the same receiver, etc. This ancillary bill was filed September 29th. September 29 and October 3, 1902, similar ancillary bills were filed by the same plaintiffs in the United States District Courts for Mississippi, Kentucky, and Illinois, where personal property was located. In all these proceedings the defendant corporation appeared and answered, admitting the allegations of the complaint. The creditors of the defendant were all in Florida, Alabama, and Louisiana. The same receiver was appointed in the several ancillary suits as in the main suit in Alabama. September 26, 1902, one Pearce, a citizen of Alabama, filed a petition against such defendant corporation, also asking the appointment of a receiver, in the state court of Louisiana, and, service as required by the laws of that state having been made, a receiver was appointed by the state court of Louisiana, on the 27th day of October, 1902. On the 30th day of October, 1902, said Pearce filed a bill against the same defendant in the United States Circuit Court for the District of New Jersey. In that suit he described the proceedings in the other suits above mentioned, both in the state court of Louisiana and the several Circuit Courts of the United States, and the Circuit Court of the District of New Jersey appointed a receiver of the property of the defendant.

It is self-evident, I think, that the main and primary jurisdiction was in the United States District Court for the Southern District of Alabama. True, the jurisdiction of that court did not reach to real estate or property in other states or districts, and hence the necessity and propriety of the ancillary suits. The subsequent suit in the United States District Court of the District of New Jersey, where the corporation had no property and had not done any business, brought by Pearce, who had also brought suit in the state court of Louisiana, did not in any way affect that jurisdiction over the subject-matter situate in Alabama, or of the ancillary actions as to property in other states where commenced, there being property in each of such jurisdictions.

The subsequent suit at the actual place of incorporation and domicile of the defendant corporation did not and could not give that court jurisdiction over the real and personal property of the corporation situated in other jurisdictions, where the courts having jurisdiction of both the parties and subject-matter had taken actual possession of the property and were proceeding to administer it. The controversy arose between the receiver appointed by the District Court in Alabama and by the courts mentioned in other states, who in ancillary actions in those courts appointed the same receiver, and the receiver appointed by the state court in Louisiana and later by the District Court of New Jersey. It will be noted that the ancillary bill was filed in the United States District Court of Louisiana September 29, and the receiver appointed there and that the receiver in the state court of that state was not appointed until October 30, 1902. In the meantime the receiver appointed by the United States District Court in Louisiana had qualified and become entitled to the possession of the property in that state, so that it was legally in the custody of that court and lawfully so. The court held:

"The Alabama federal court first obtained jurisdiction by the filing of the bill and service of process, and by first appointing a receiver, and also by obtaining, through its receiver, actual possession of the property involved before the filing of the petition and service of process thereon in the state court. By the application, therefore, of any one of the rules stated, the Alabama federal court first acquired jurisdiction; and, having acquired jurisdiction of the controversy, and possession, through its receiver, of the property involved, the subsequent proceedings and decree in the state court conferred no authority or right on the receiver appointed by the latter court to take or obtain by suit the possession of the property. Gluck & B. Rec. (2d Ed.) 97."

This, of course, was right, and accords with all the decisions.

In the instant case, if it could be properly held that the District Court of the Southern District of New York had jurisdiction to appoint receivers of the real and personal property of the defendant corporation situated in the Northern District of New York, and authorize them to take possession of and incumber same by issuing receiver's certificates, that would end this controversy; for, while it might be necessary to take ancillary proceedings, the proceedings in the Northern District in their very nature would be ancillary to the primary suit and in aid of that court. The court in that district would have jurisdiction of the parties and of the subject-matter of the suit, and in such case "jurisdiction to hear and decide the suit and cause mesne or final process to be issued and executed as fully as if the said subject-matter were wholly within" that district. The difficulty is, as I view the case, that the District Court of the Southern District had and has no jurisdiction whatever over the property of the defendant in the Northern District, for the reason there was no real estate or other subject-matter of a fixed character belonging to the defendant in the Southern District, and hence the suit could not be brought there, even by consent of the defendant, it being of a local character, inasmuch as the property to be seized and acted upon was real and personal, that is, of a mixed character, and situated wholly in the Northern District. Section 55, Judicial Code.

If the District Court of the Southern District of New York had jurisdiction of this suit, that is, if "the land or other subject-matter (of the suit) of a fixed character" did lie partly in the Southern District, the remainder being concededly in the Northern District, I do not see any necessity for action by the court in the Northern District, for in such a case the suit—

"may be brought in the District Court of either district; and the court in which it is brought shall have jurisdiction to hear and decide it, and to cause mesne or final process to be issued and executed, as fully as if the said subject-matter were wholly within the district for which such court is constituted."

That is, the fact that such real estate or subject-matter of a fixed character exists and is situated partly in the one district and partly in another of the same state gives to the court of either district full power to hear, try, and determine the case and issue mesne or final process. This must mean that the court exercising jurisdiction has full power to make interlocutory orders and decrees, as well as final ones, in the case and respecting the property. Section 55 of the Judicial Code (Comp. St. 1916, § 1037) gives full and complete jurisdiction to either court in such case. This is the plain purpose of the section, which is but a re-enactment of section 742, R. S. U. S., which was enacted May 4, 1858.

It seems to me this matter may be summarized thus:

1. This is a local action; that is, "a suit of a local nature" in equity.

2. The land and subject-matter of a fixed character lies wholly in the Northern District of New York, and no part of it lies in the Southern District of New York.

3. A bank account or a lease of two or three rooms for subsidiary office purposes does not constitute a subject-matter of a fixed character, within the meaning of section 55, Judicial Code.

4. The domicile or residence of the defendant was and is in the Northern District of New York, where its actual business offices and books are.

5. The subject-matter of the action is real estate and personal estate, and jurisdiction of the subject-matter of the suit could not be given and was not given to the District Court in the Southern District by the appearance there and answer of the defendant admitting all the allegations of the complaint.

6. The District Court in the Southern District of New York had and has no jurisdiction of the subject-matter of the action.

7. The District Court of the Northern District of New York cannot lawfully exercise ancillary jurisdiction in that suit, as the exercise of ancillary jurisdiction presupposes jurisdiction in the Southern District.

8. When want of jurisdiction of the court in the main suit appears it is the duty of the court asked to exercise ancillary jurisdiction to raise the question itself and decline to act if want of jurisdiction in that court appears. Conklin v. United States Shipbuilding Co. (C. C.) 123 Fed. 913, 917.

[15] In that case Judge Putnam, of the First Circuit, was asked to exercise ancillary jurisdiction and confirm the appointment of a receiver, and he said (page 917):

"The first substantial question I have to consider is whether the Circuit Court for the District of New Jersey had jurisdiction in equity on the bill filed there."

Stewart v. Laberee, 185 Fed. 471, 109 C. C. A. 351, has nothing to do with the vital questions presented here. In that case a railroad corporation organized under and pursuant to the laws of the state of Washington constructed, owned, and operated a railroad in Alaska, and the railroad company owned and operated a construction company, which was also operated with its property in Alaska. An equity suit similar to the one here was brought in the District Court of the District of Alaska, and a receiver of all its property appointed by that court. The court had jurisdiction, not only of the parties, but of the subject-matter of the suit. The order appointing the receiver directed the officers of the companies to turn over to the receivers all the property of the companies, including bills, notes, accounts, and books. The defendant Laberee had been treasurer of the construction company in Alaska, and it was claimed he was indebted to it in the sum of $22,000. To recover this sum the receiver brought suit in the District Court of Alaska. Defendant pleaded that he had settled with the construction company by giving to it his notes for $6,000, and on the trial he produced notes to the company for $6,000, marked "Canceled," but at a date several months subsequent to the appointment of the receiver, and also a resolution of the board of trustees of the construction company, passed several months later, ratifying and approving the settlement of the notes for $6,000. This was the only evidence of authority to make the settlement, and there was no evidence the notes were ever delivered to the corporation, or that its manager had authority to make the settlement. This resolution of confirmation and ratification was passed at Seattle, Wash., where the company was incorporated.

The court held that the settlement, if made, was in violation of the rights of the railroad company and its creditors, and of the order appointing the receiver, which order required the notes, if in existence, to be turned over to the receiver, and that a finding by the trial court in Alaska that the alleged settlement, if made, was fraudulent and void, was warranted by the evidence. If the case is of any importance here, it is in that it holds the court in Alaska, where the companies were doing business, and where all the property was located, and where jurisdiction was obtained of both companies and also of their officers, had jurisdiction to appoint the receiver and require the delivery to him of the property, including the notes in question. This was, of course, true. That court had jurisdiction of the officer owing the debt, and he could not, after the receiver was appointed, go to the state of Washington and there settle a cause of action against him belonging to the corporation in violation of such order of the court.

The case of Horn v. Pere Marquette R. Co. (C. C.) 151 Fed. 626, has been cited as authority for the proposition that the District Court in the Southern District of New York has jurisdiction in the instant case, but, far from it, for it is a decision sustaining each proposition herein stated. That was a suit in equity concerning a railroad running through two districts of the same state, Michigan (see page 631), and the ob-

ject of the bill was the same as here. Judge Lurton held that the suit was one of a local nature, and cited East Tenn., etc., R. Co. v. Atlanta, etc., 49 Fed. 608, 15 L. R. A. 109, supra, and Goddard v. Mailler (C. C.) 80 Fed. 422 (see pages 632, 633); that diversity of citizenship existed, as Horn was not a citizen of Michigan (page 630); that the question of being sued in the right district was out of the way, as the defendant appeared voluntarily and answered, admitting the allegations of the complaint (page 630); that the bill was one to place a great system of going railway, whose lines covered each of the Michigan districts, in gremio legis, and have same preserved and operated, etc. (page 631); that is, that the property which was the subject of the suit was situated partly in one district and partly in another district of the same state, part in the district where the suit was brought, and hence the case was covered by and within the provisions of section 742, R. S. U. S., now incorporated into the Judicial Code as section 55, and hence the learned judge said:

"Horn's bill was undoubtedly one which might be filed in either of the Michigan districts."

And (see the same page) the judge also held that on such facts jurisdiction of both the person and subject-matter of the suit, which lay in two districts of the same state, existing ancillary bills were not necessary. The second subdivision of the syllabus may be misleading, if we assume it is implied that jurisdiction of the subject-matter in a local action is given when wholly without the district wherein the suit is brought, provided the defendant appears and answers. The case itself does not so hold or suggest.

City of Shelbyville, Ky., v. Glover, 184 Fed. 234, 237, 106 C. C. A. 376, is another case where the property, the subject of the action, was partly in one district and partly in another district of the same state, and the action was local in its nature.

This court holds that on the papers it appears conclusively that the suit is one of a local nature and character, and that all the land and subject-matter of the suit of a fixed character is located and situated wholly in the Northern District of New York, and does not lie partly in the Southern District of New York, and hence this court should not and cannot properly exercise ancillary jurisdiction; and, further, that if it be true that any part of the land or other subject-matter of the suit lies partly in the Southern District of New York there is no necessity for the exercise by this court of ancillary jurisdiction or power in the suit brought in that district, as in such case the court in the Southern District has full and complete power and jurisdiction over the parties and subject-matter of the suit.

This is an important matter. It involves hundreds of thousands of dollars and the title to real estate of great value. The court in the Northern District, as we have seen, cannot validate invalid orders made by the court in the Southern District, or validate invalid receiver's certificates by ancillary proceedings.

This court is also of the opinion that, as all creditors of the defendant corporation are invited by the ancillary bill to come in and become

parties to this suit, and have the right to come in, when they do come in and find the facts are such that there is no jurisdiction to proceed and take possession of the property and run the business, and do the things necessary to be done to carry on the suit and accomplish the purposes sought to be accomplished, they may present the facts to the court, and at least call upon it to exercise its judicial power in the premises and refuse to make orders it has no power to make. It cannot be that creditors holding over $100,000 in valid claims against this corporation, by the action of one creditor acting with the defendant, have been precluded from having a proper suit brought in the proper district and valid orders and decrees made, or from objecting to the making of invalid ancillary orders and decrees in a suit where no jurisdiction exists. If this property is to be possessed and the business continued, or the property incumbered, it should be done pursuant to valid orders and decrees, and if it is to be sold it should be sold pursuant to a valid decree, made by a court having jurisdiction to pronounce it.

This court is not informed of any case in the Supreme Court of the United States holding that in such a suit as this, or of this character, the question of the jurisdiction of the court over the subject-matter may not be raised and brought to the attention of the court at any time and by any interested party. Is it possible that creditors who come into this suit may not raise the question of diversity of citizenship and want of jurisdiction, should it be discovered that plaintiff is an actual resident and citizen of the state of New York? May they not inform the court of that fact? If the defendant has admitted that the plaintiff was a nonresident, *it* may be precluded from raising the question; but does that bar other interested parties or the court itself? This is not a question of jurisdiction over the debtor corporation—Fulton Steel Corporation. The defendant has submitted to the jurisdiction, as it had the power to do. It is a question of the jurisdiction of the court over the subject-matter, real property, which the statute does not confer on the court in the Southern District, and which no consent can confer.

Nor is this a question of the sufficiency of the bill of complaint to confer equitable jurisdiction in the proper court. It is all-sufficient in that respect. The objection goes to the right and power of the court in the Southern District to entertain the suit and adjudicate as to and respecting the subject-matter. On the facts stated it appears that Congress has not conferred the jurisdiction, and by not conferring it such jurisdiction is denied to that court. In Horn v. Pere Marquette R. Co., supra, Judge Lurton said it would lead to absurd consequences if, after the defendant had submitted to the jurisdiction of the court, other parties coming in might "reopen the matter of jurisdiction over the debtor corporation." This is, of course, true. The learned judge had taken great pains to show jurisdiction of the subject-matter. The right to be sued in a particular district or state is personal, and may be waived (Pollard v. Dwight, 4 Cranch, 421, 2 L. Ed. 666; St. Louis, etc., Railway v. McBride, 141 U. S. 131, 132, 11 Sup. Ct. 982, 35 L. Ed. 659); but jurisdiction over a subject-matter is not personal, and cannot be waived, or conferred by consent. So, if the question in an equi-

table suit be as to the sufficiency of the allegations to confer equitable jurisdiction, it must be raised at the earliest opportunity, as, "if a defendant in a suit in equity answers and submits to the jurisdiction of the court, it is too late for *him* to object that the plaintiff has a plain and adequate remedy at law." Brown v. Lake Sup. Iron Co., 134 U. S. 530, 536, 10 Sup. Ct. 604, 606 (33 L. Ed. 1021). In that case, in stating the rule, the court adds what is the law and what makes the true rule:

"The above rule must be taken with the qualification that it is competent for the court to grant the relief sought, and that it has jurisdiction of the subject-matter."

In Cincinnati Equipment Co. v. Degnan, 184 Fed. 834, 842, 107 C. C. A. 158, 167, the headnotes give the rule without the qualification stated, but in the case itself the judge who wrote the opinion says:

"True, as stated in Brown v. Lake Superior Iron Co., the subject-matter must be within the jurisdiction of the court."

And also:

"We are therefore constrained to hold, for the purposes of this case, that the court below through diversity of citizenship obtained jurisdiction, not only of the parties to the original suit, but also of a subject-matter equitable in its nature and embracing admitted facts sufficient to justify the appointment of the receiver."

This court must decline to grant any ancillary order in the suit which recognizes jurisdiction in the District Court of the Southern District over the subject-matter of the suit, situated as it is in the Northern District, as it has no power so to do. To make orders as a matter of comity, which this court would be glad to do, and willingly would do, were it a question of comity, and not of jurisdiction, would only involve the situation, delay action, precipitate litigation, add expense, and, in the opinion of the court, result in disaster to a corporation and its property, when it is and should be the desire of all concerned to conserve and rescue the corporation from its financial difficulties if possible—at least bring about a successful operation of the business while in the hands of the court, and secure a sale, if necessary, at a fair price, and a division of the proceeds, without unnecessary diminution, amongst the creditors and stockholders entitled thereto.